IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**UNITED STATES OF AMERICA**

v.                                                     **Criminal No. 5:20-00145-02**

**RODNEY WHEELER**

### DEFENDANT'S SENTENCING MEMORANDUM

Now comes the defendant, Rodney Wheeler, by his counsel, Assistant Federal Public Defender Lorena E. Litten, and respectfully submits this memorandum to request that this Court impose a sentence of three years' probation.

**I.  Who Is Being Sentenced by This Court**

Rodney Wheeler is not the type of person one might expect to be facing sentencing for a federal felony offense. He is a 48 year-old man who comes before this Court with little to no prior criminal history, save for a few citations. PSR ¶¶ 49, 53. Mr. Wheeler has lived his entire life within the Southern District of West Virginia. PSR ¶ 55. He graduated from Oak Hill High School in 1990, and has twenty-seven years of work experience in television as a news director for local news agencies. PSR ¶¶ 59-60. He has been married to Julie Wheeler for twenty-four years and is the proud father of two young men, ages eighteen and fifteen. PSR ¶ 54.

**II.  The Offense**

In September 2019, Mr. Wheeler's wife, Julie Wheeler, was indicted on federal charges of healthcare fraud. PSR ¶ 6. She was released on bond pending trial, and

pled guilty to one count of healthcare fraud on February 11, 2020. *Id.* Mrs. Wheeler's sentencing was set for June 17, 2020. *Id.* However, in the months leading up to her sentencing, Mrs. Wheeler began formulating a plan to stage a fall from the main overlook at Grandview Park in order to avoid the possibility of going to prison. PSR ¶ 20.

In order to help carry out her plan, Mrs. Wheeler enlisted the help of her husband, Rodney Wheeler, and their son, R.W. *Id.* According to Mrs. Wheeler's own statement following the incident, Mr. Wheeler and R.W. initially declined to help Mrs. Wheeler execute "the plan," but eventually agreed. *Id.* She explained, "[t]hey agreed because they love me, and they would do anything for me and that was wrong of me because I knew that." *Id.*

On May 31, 2020, Mr. Wheeler and R.W. set off to put "the plan" into action. They drove to Grandview Park. PSR ¶ 7. R.W. walked to the main overlook and threw his mother's shoe and cell phone over the main overlook at the park. *Id.* Then, he began yelling that Mrs. Wheeler had fallen over the overlook as his father approached the scene. *Id.* Mr. Wheeler and R.W. then placed a 911 call and told operators that Mrs. Wheeler had fallen over the overlook. *Id.* A large-scale search and rescue effort to locate Mrs. Wheeler began, including helicopter searches, a canine search, and repelling into the gorge. PSR ¶ 9. All the while, Mrs. Wheeler hid at the family home. PSR ¶¶ 21-22. Mr. Wheeler also posted on his personal Facebook page that Mrs. Wheeler had fallen off the overlook. PSR ¶ 13. On June 2, 2020, United States Probation Officers came to the Wheeler residence to do a walk-through,

and Mr. Wheeler gave misleading statements to probation officers in order to conceal Mrs. Wheeler's whereabouts. PSR ¶ 14. She was later located on June 2, 2020 inside the residence in a downstairs closet by law enforcement officers. PSR ¶ 16.

### III. 18 U.S.C. § 3553(a) Factors for Consideration.

A. <u>At the time of the offense, Mr. Wheeler suffered from severe untreated anxiety and depression which was exacerbated by events in his life.</u>

Throughout much of his life, Rodney Wheeler has struggled with anxiety and depression, which he is currently being treated for with a prescription of Lexapro and counseling. PSR ¶ 57. At the time of the instant offense, however, Mr. Wheeler was not medicated or receiving any type of mental health treatment or counseling. *Id*.

In the two years leading up to this offense, Rodney Wheeler lost his brother and his mother, who both died in 2018. PSR ¶ 53. In 2019, as discussed above, Mrs. Wheeler was charged with healthcare fraud, and Mr. Wheeler faced the possibility of losing her – at least for a period of time – to a federal prison facility. PSR ¶ 6. Then, in January of 2020, Mr. Wheeler's father passed away. PSR ¶ 53.

It was against this backdrop that Mrs. Wheeler first asked Mr. Wheeler for his help in faking her own death so that she could avoid going to prison. According to Mrs. Wheeler, when she first asked Mr. Wheeler for help in this scheme, he refused. PSR ¶ 20. But, she kept asking. *Id*. Mrs. Wheeler knew of Mr. Wheeler's love and devotion to her, and, by her own admission, used it to convince him to help her. *Id*. The last thing Mr. Wheeler wanted, in the midst of depression and anxiety, and after having lost three family members in quick succession, was to lose his wife too. And

3

so he made the fateful decision to help Mrs. Wheeler put her ill-conceived plan into action.

> B. <u>In violating the law in this case, Mr. Wheeler acted out of a misplaced sense of love and devotion to his wife.</u>

Rodney and Julie Wheeler have been married for twenty-seven years. PSR ¶ 54. Mr. Wheeler possesses a deep, unconditional love for his wife, who he has continued to stand by, despite both her initial criminal conduct and her role in convincing him to participate in the instant offense. One example of this love can be seen in the letter Mr. Wheeler wrote to this very Court on Mrs. Wheeler's behalf. Dkt. No. 62. Mr. Wheeler describes Mrs. Wheeler as the "rock" who he could lean on for support through good times and bad," as well as his soulmate and best friend. *Id*. In that letter, Mr. Wheeler also explained that his wife had helped him to care for his mother and father when they were ill. *Id*. He says that Mrs. Wheeler had put the needs of her own family, as well as Mr. Wheeler's family, ahead of her own. *Id*.

Throughout their marriage, Mrs. Wheeler had always stood by Mr. Wheeler and helped him in every situation in which she was able. She had helped take care of his family members, she had put his needs ahead of her own. Mr. Wheeler felt that this was his chance, for once, to step up and help his wife. Although Mr. Wheeler's actions were misguided and wrong, this was something he was motivated to do out of love for his wife and the fear of losing her.

C. <u>Mr. Wheeler has substantially complied with the conditions of his release, which evidences his ability to succeed under supervision.</u>

Rodney Wheeler was placed on bond pending further proceedings in the instant case on August 24, 2020, under fairly strict conditions such that he has been restricted to his residence twenty-four hours a day and unable to leave his home unless given express permission of the court. Dkt. No. 28. He was later given permission to leave his home for supervised visits with his children and to find housing for himself and his children. Since his release, save for one incident where Mr. Wheeler mistakenly left his home on the wrong day to attend a hearing, there have been no alleged violations. PSR ¶ 5.

Mr. Wheeler has remained employed with FedEx in Beaver, WV. PSR ¶ 60. His arrest in the instant offense also served as a wakeup call for Mr. Wheeler. He needed to make his mental health a priority and seek some treatment for his depression and anxiety, and he has done so. Since December 2020, Mr. Wheeler has participated in monthly therapy sessions, and is now prescribed Lexapro to help with his depression and anxiety. PSR ¶ 57.

Mr. Wheeler's strict adherence to his conditions of release on bond provides significant evidence that he has what it takes to be successful under supervision. He has worked extremely hard in order to provide a suitable home so that his youngest son (his oldest son is now an adult) can be returned to live with him in a stable home environment. He wants nothing more than to be able to live as a family with his children again.

D. <u>Mr. Wheeler would be statistically less likely to recidivate if sentenced to probation rather than a term of imprisonment.</u>

According to a study conducted by the Sentencing Commission, "[o]ffenders who received a prison only sentence had a higher rearrest rate than offenders who received a different form of sentence."[1] For sentenced persons between ages 45 to 49, there is a 27.7% chance the person will be rearrested if he or she received a sentence of probation.[2] Mr. Wheeler will be 48 on the day he is sentenced. PSR ¶ 3. Persons in the same age bracket as Mr. Wheeler who receive a custodial sentence show an increase in the rate of recidivism to 47.9%.[3] The Commission's data shows that a sentence of probation lowers the risk that Mr. Wheeler would reoffend.

IV. **A Non-Custodial Sentence is warranted.**

Given the non-violent nature of this offense; Mr. Wheeler's lack of criminal history the role of the circumstances of his life leading up to the offense and his mental health played on his commission of the offense; his substantial compliance with bond and finally, his age; a sentence of imprisonment is unnecessary to achieve the statutory aims of sentencing, and in Mr. Wheeler's case in particular, would be counterproductive.

None of the above can excuse Mr. Wheeler's actions in this case. What he and Mrs. Wheeler did was wrong; it wasted countless hours of rescuers' time and efforts, as well as large amounts of taxpayer dollars; it needlessly caused alarm and worry to

---

[1] Kim Steven Hunt & Billy Easley II, *The Effects of Aging on Recidivism Among Federal Offenders*, U.S. Sentencing Commission, 26 (Dec. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.
[2] *Id.*
[3] *Id.*

their family and friends; and it actually hurt their family more than it helped. That being said, Mr. Wheeler has taken full responsibility for his actions by admitting his wrongdoing and making positive changes in his life. He is deeply ashamed of what he did and has done what he can to make things right and move forward with his life. Mr. Wheeler is now a convicted felon, a status which will follow him for the rest of his life. He has lived throughout the past year with substantial restrictions placed on his freedom, and he will continue to have his freedom restricted, whether this court imposes a prison sentence or not.

Far more good would come out of imposing a noncustodial sentence and allowing Mr. Wheeler to live as a family with his children and continue rebuilding his life. Therefore, for the reasons discussed above, Mr. Wheeler requests that this Court sentence him to a term of three years' probation.

Respectfully submitted this 29th day of March, 2021.

**RODNEY WHEELER**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/ Lorena E. Litten**
Lorena E. Litten, Bar No. 12226
Assistant Federal Public Defender
United States Courthouse
300 Virginia Street, East, Room 3400
Charleston, WV 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: lorena_litten@fd.org